**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel.** | ) | |
| **MICHAEL KARASTEV,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No.** |
| | ) | |
| **ROB JEFFREYS, Director,** | ) | |
| **Illinois Department of Corrections,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**<u>PETITION FOR WRIT OF HABEAS CORPUS</u>**

**<u>JURISDICTION</u>**

This Court has jurisdiction pursuant to 28 U.S.C. § 2254. The petitioner is in custody in violation of the Constitution of the United States, and he has fully exhausted his remedies in the Illinois courts. This Court has jurisdiction over the respondent, in that Rob Jeffreys is the Director of the Illinois Department of Corrections, and the petitioner is presently on mandatory supervised release.

**<u>BACKGROUND</u>**

<u>Grand Jury Proceedings</u>

On December 21, 2012, a McHenry County grand jury return an indictment charging Michael Karastev with one count of possession with intent to distribute cannabis; one count of unlawful possession of cannabis; and one count of cannabis trafficking. At the grand jury, the State presented a single witness, McHenry County Sheriff's Deputy Eric Woods.

Deputy Woods testified that he was on "routine patrol" in the Crystal Lake area when he saw Mr. Karastev commit two traffic violations – making a left turn without using a signal and improper

lane usage.  According to Woods, he initiated a traffic stop of  Mr. Karastev's vehicle, a silver Mercedes cargo van.  Deputy Woods testified that Mr. Karastev seemed very nervous and his hands were shaking.  After asking for and receiving Mr. Karastev's driver's license, Deputy Woods returned to his squad car to "run" Mr. Karastev's driver's license for legitimacy and for any outstanding warrants.

While Deputy Woods was running Mr. Karastev's driver's license, a K-9 unit arrived and the canine walked around the exterior of Mr. Karastev's vehicle and purportedly "alerted" to the presence of contraband inside the vehicle.  Deputy Woods and the canine then searched the interior and cargo area of the van.  Inside the cargo area of the van were two large wooden crates.  The first crate was empty.  The canine "alerted" again and Deputy Woods made a hole in the crate to see inside.  Deputy Woods testified that he observed a clear plastic package which appeared to contain what Deputy Woods believed to be cannabis.  Deputy Woods then placed Mr. Karastev under arrest and the van was towed to a police impound.  The green plant material was inventoried and weighed 33,142 grams.

According to Deputy Woods, Mr. Karastev had a conversation with someone in the department during which Mr. Karastev stated that this was his third cannabis transport from California in the past 18 months.

Motion To Quash Arrest and Suppress Evidence

Michael Karastev testified at the evidentiary hearing that he was 40 years of age, a United States citizen, and that he was originally from Bulgaria.  Karastev owned a small trucking company in Sunnyvale, California.  On December 3, 2012, Mr. Karastev was in the area of Routes 31 and 14 in Crystal Lake, driving one of his Mercedes cargo vans, when he was pulled over by a police car after it activated its emergency lights and siren.

Two sheriff deputies approached Mr. Karastev's vehicle, asked for and received Mr. Karastev's driver's license and proof of insurance. Deputy Woods indicated to Mr. Karastev that he was pulled over because there was something suspicious "from Menard's," and did not indicate that Mr. Karastev was being stopped for crossing over the white line or failing to use his turn signal.

About 20-30 minutes before he was stopped by Deputy Woods, Mr. Karastev parked his van in the Menard's parking lot, walked across Route 14 to get coffee at a coffee shop, returned to his vehicle a few minutes later, and drove away.

McHenry County Sheriff's Detective Keltner testified that in November 2012 he was working in the narcotics unit and was involved in an investigation into cannabis trafficking from California to Illinois. A confidential informant indicated that Michael Karastev was transporting cannabis from California to Illinois and that Karastev drove a white Sprinter van with California license plates. On December 2, 2012, the informant told Keltner that Mr. Karastev would likely be traveling to Illinois on Interstate 80, and that there would be cannabis inside a shipping crate in the van which would be packaged in "double sealed vac bags." Based on this information, Keltner put out a bulletin for Karastev's van.

Keltner asked the informant to call Karastev to find out where he was. Keltner overheard Karastev tell the informant that he was going to get some coffee and then run across the street from Menard's. Keltner called his supervisor, Sergeant Muraski, to advise him that Karastev's probable location was in Crystal Lake, Illinois. Sgt. Muraski subsequently informed Keltner that his team had located an individual, who seemingly matched Karastev's description, leaving the van they were looking for. Keltner asked Sgt. Muraski to have a dog "sniff the vehicle while it was in a public parking lot."

Deputy Cosman is a canine handler and went to the Menard's parking lot on December 3,

2012. Deputy Cosman conducted a dog sniff on the van that resulted in the dog "alerting" on the lower seam of the passenger side door of the van. Sgt. Muraski instructed Cosman to leave the area, so Cosman went to a nearby gas station.

Sgt. Muraski reported to Detective Keltner that the dog had positively alerted on the vehicle. After hearing about the alert by the dog, Keltner instructed Sgt. Muraski to have Karastev's van stopped if and when it left the Menard's parking lot.

McHenry County Sheriff's Deputy Eric Woods testified, contrary to his grand jury testimony, that on December 3, 2012, he was part of an investigation targeting Michael Karastev. Woods was instructed to monitor the area of Routes 31 and 14 in Crystal Lake and look for a silver Sprinter Mercedes cargo van with California license plates which was allegedly transporting a large amount of cannabis from California. Woods was informed that the Sprinter van was parked in the Menard's parking lot, so he went to the parking lot and "set up" in his unmarked squad car. Woods saw Mr. Karastev getting coffee at the coffee shop across the street from Menard's. When Mr. Karastev returned to the van and left the Menard's parking lot, Woods followed the van and observed Mr. Karastev allegedly fail to use his turn signal and cross over a solid white line. Woods stopped the van Mr. Karastev was driving. Deputy Woods obtained Mr. Karastev's driver's license and returned to his squad car.

About 20 minutes after Deputy Cosman left the scene, he heard Deputy Woods conducting a traffic stop, so Cosman responded to the scene in two-three minutes. Deputies Cosman and Flannery arrived in separate cars. Deputy Woods took Mr. Karastev back to his squad car and Woods instructed Cosman to walk his canine around the van a second time. The canine "alerted" on the outside passenger side cargo door.

Deputies Cosman and Woods opened the van door, placed the canine inside the van, and

allowed the canine to sniff the cargo area of the van. The canine alerted on the crate closest to the front seat. At no point did Mr. Karstev consent to the officers' or the canine searching the interior of his van.

The trial court denied the motion to suppress.

Motion *In Limine*

Prior to trial, the State filed an extensive motion *in limine* asking the trial court to: (1) bar Mr. Karastev from testifying as to statements he made to police in which he denied knowledge of the contents of the crate inside his vehicle; (2) bar Mr. Karastev from eliciting testimony of possible sentences; (3) bar Mr. Karastev from eliciting testimony on the court's ruling on the motion *in limine* and the proponent of the motion; and (4) admit other crimes evidence in the form of Mr. Karastev's contested statement to McHenry County Sheriff Detective Draftz that Karastev had transported cannabis from California to Illinois on two prior occasions. The trial court granted the State's motion in full without a hearing and without defense counsel being present.

Trial

Following a jury trial, Mr. Karastev was found guilty on all counts. On July 14, 2016, Mr. Karastev was sentenced to 12 years in the Illinois Department of Corrections.

## **DISCUSSION**

However insatiable the urge may be to distort or ignore fundamental constitutional rights and legal principles in order to convict one who is accused of committing a criminal offense, this urge, whenever present, must be completely suppressed and the rules of law must always prevail. A mere cursory examination of the record in the case at bar clearly reveals that Mr. Karastev was denied his Federal constitutional right to the effective assistance of counsel by his attorney's grossly incompetent and blatantly deficient performance.

5

In *Kimmelman v. Morrison,* 477 U.S. 365, 374 (1986), the United States Supreme Court held, "The right to counsel is a fundamental right of criminal defendants; as it assures the fairness, and thus the legitimacy, of our adversary process." The *Kimmelman* Court also held:

> The right of an accused to counsel is beyond question a fundamental right. [Citation]. ("The right of one charged with a crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours."). Without counsel the right to a fair trial itself would be of little consequence, [citations], for it is through counsel that the accused secures his other rights. [Citations.] ("Of all the rights that an accused person has, the right to be represented by counsel is by far the more pervasive, for it affects his ability to assert any other rights he may have"). . . . In other words, the right to counsel is the right to effective assistance of counsel.
> *Kimmelman*, 477 U.S. at 377.

Claims of ineffective assistance of counsel under the Sixth Amendment are governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Such a claim has two components. First the defendant must show that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Both aspects of the *Strickland* test are satisfied in this case.

**Defense Counsel Failed to Amend the Motion to Suppress After New Facts Were Disclosed**

According to Deputy Woods' grand jury testimony, he was on "routine patrol" in the area of Crystal Lake when he observed Mr. Karastev commit two traffic violations. After seeing these two alleged violations, Deputy Woods conducted a traffic stop. Woods told the grand jury that while he was "running" Karastev's driver's license, a K-9 unit arrived and the dog "alerted" to the presence of narcotics when it walked around Mr. Karastev's van. Based on the alert, Deputy Woods opened the rear door of the van, observed two wooden crates, and placed the dog inside the interior of the van so the dog could sniff the two wooden crates. After the canine "alerted" on the second crate, Deputy Woods made a hole in the crate and observed a clear plastic package with green plant

6

material inside, which Woods believed was cannabis.

Following his arrest, Mr. Karastev allegedly stated that he owned a trucking company in California and that he was asked to transport cannabis from Reno, Nevada to a warehouse in Illinois on two previous occasions.

Based on Deputy Woods' grand jury testimony, Woods' written police report, and Karastev's denial that he committed any traffic violations, defense counsel filed a motion to quash the arrest and suppress the cannabis. The legal theory upon which the motion was predicated was that Mr. Karastev was "detained under circumstances and for a length of time which exceeded the scope of a legitimate traffic stop."

About five months after the motion to quash and suppress was filed, the State tendered to defense counsel a supplemental police report by Detective Keltner that revealed for the first time new details as to why Mr. Karastev was stopped by Deputy Woods. Detective Kiltner's supplemental report divulged that Kiltner had requested the K-9 Unit to perform a dog sniff on Mr. Karastev's vehicle while it was parked in the public parking lot. After the dog "alerted" to the presence of narcotics inside Karastev's van, Keltner instructed Sgt. Muraski to have the van stopped if and when it left the Menard's parking lot.

Although the true circumstances of the traffic stop and involvement and presence of the K-9 Unit were made known through Keltner's supplemental report, defense counsel failed to file an amended motion to quash and suppress.

Deficient Performance

When the State disclosed an entirely different version of events than those set forth in Deputy Woods' police report and grand jury testimony, defense counsel's failure to amend or otherwise modify the legal theory upon which the motion to quash and suppress was premised was objectively

7

unreasonable.

It must be remembered that after Deputy Woods obtained Mr. Karastev's driver's license, the subject of the two alleged traffic violations was totally abandoned by Woods, as law enforcement officials pursued their search for the presence of cannabis. Indeed, Woods and Keltner ultimately admitted that the stop was never about Mr. Karastev's driving errors, but was driven entirely by law enforcement officials' investigation into Mr. Karastev's possible possession of cannabis

In light of the traffic stop being an admitted ruse in order to search Mr. Karastev's van, the nature of the trial court's inquiry would have been quite different. Upon learning that a confidential informant was the basis for targeting Mr. Karastev, and the reason for the K-9 Unit to report to the Menard's parking lot and perform a dog sniff, defense counsel should have pursued the theory that Deputy Woods' traffic stop of Mr. Karastev was pretextual and the product of an illegal search while it was parked at the Menard's store. Had such a theory been advanced, the motion to quash and suppress would likely have been successful.

Prejudice

Defense counsel's failure to amend the motion to quash and suppress resulted in substantial prejudice to Mr. Karastev in that the dog sniff violated the Fourth Amendment. In addition, the traffic stop was a pretext to search for evidence of cannabis. Thus, but for defense counsel's deficient performance, the result have been the suppression of the illegally cannabis seized and the statements by Mr. Karastev which were the fruit of the illegal seizure.

**Defense Counsel Failed to Respond to the State's Motion *In Limine***

On June 1, 2015, the State filed a motion *in limine* asking the Court to make certain rulings in advance of trial. Appended to the motion was a notice of filing and a certificate of service to Mr. Karastev's attorney, Stephen L. Richards, which informed defense counsel that the motion *in limine*

8

would be heard at 9:00 a.m., on June 9, 2015. On that date, defense counsel failed to appear or otherwise answer the motion *in limine*. As a result of defense counsel's blatant blunder, the trial court granted the State's motion in its entirety.

As a result of defense counsel's blatant error, the State was permitted to introduce at trial "other crimes evidence" in the form of Mr. Karastev's alleged admissions that he had previously transported cannabis to Illinois from Reno, Nevada.

Deficient Performance

As a result of defense counsel's failure to appear and respond and object to the State's motion *in limine*, the State introduced evidence that Mr. Karastev supposedly told Detective Draftz that approximately one year earlier he went to a warehouse in Reno, Nevada, picked up two crates with cannabis inside and transported the crates to a warehouse in Lake in the Hills, Illinois for $8,000. According to Draftz, when Mr. Karastev arrived at the warehouse in Reno, a worker loaded two crates into his truck, handed Karastev a fictitious bill of lading, and told Karastev that the crates contained books and marijuana. Through Karastev's alleged statement to Draftz, the State also sought to admit a second instance three months earlier where Karastev was supposedly instructed by an unknown male to drive to the warehouse in Reno, pick up two crates, and deliver the crates to the warehouse in Lake in the Hills. According to Draftz, Karastev indicated that he watched someone loading boxes containing only marijuana into a crate and sealing the crate with bolts. The sealed crate was then loaded into Karatstev's van followed by an empty unsealed crate.

It was the State's position that this other crimes evidence was relevant as it related to Karastev asserting an affirmative defense that he did not know what was in the crates he was transporting and, thus, did not knowingly possess or traffic cannabis.

Since Karastev's prior "crimes" were offered to prove his knowledge and intent to transport

cannabis from Reno to Illinois, defense counsel should have objected on the basis that apart from the purported admissions by Karastev, there was no evidence that the prior incidents ever occurred. Mr. Karastev's lack of knowledge as to the contents of the crates he was transporting was the fulcrum upon which Mr. Karastev's defense turned. Accordingly, it made no sense at all for defense counsel to forego making any objection to the admission of this evidence through the State's motion *in limine.*

<u>Prejudice</u>

The State relied heavily, if not exclusively, on Mr. Karastev's purported admissions to Draftz to rebut Mr. Karastev's testimony that he was unaware of the contents of the crates he was transporting. Since the other crimes evidence was admitted without objection, and the other crimes evidence was a material factor in Mr. Karastev's conviction, Mr. Karastev has satisfied the prejudice prong of *Strickland*, as it is highly unlikely Mr. Karastev would have been convicted without the other crimes evidence.

**<u>Defense Counsel Failed to Move to Suppress the Statements Mr. Karastev Allegedly Made</u>**

The record is undisputed that Michael Karastev is a native of Bulgaria and spoke very little English in his daily life in December of 2012. Nevertheless, McHenry County Sheriff Detective Draftz contended that he engaged in an unrecorded one-on-one conversation with Mr. Karastev. Draftz testified that Karastev supposedly admitted not only to the instant offense, but that Karastev also admitted to transporting cannabis into Illinois on two prior occasions. As noted above, those two instances were relied upon heavily by the State to establish that Mr. Karastev knew he was transporting cannabis in the two crates inside his van on December 3, 2012.

<u>Deficient Performance</u>

The State contended that Michael Karstev made various admissions to Detective Draftz, in

which he admitted his culpability in the commission of the alleged offenses, as well as his participation in two similar incidents in which he transported cannabis from Reno, Nevada to Illinois. When the State sought to admit these admissions into evidence, it became readily apparent that a motion to suppress Mr. Karastev's alleged statements to Detective Draftz should have been made. Defense counsel made no attempt to suppress the statements attributed to Mr. Karastev by Detective Draftz. More importantly, the trial testimony established that Michael Karastev's statements should and would have been suppressed had a suppression motion been made. Defense counsel was incompetent in failing to make a motion to suppress Michael Karastev's statements to Detective Draftz.

Prejudice

Without the admissions attributed to Michael Karastev by Detective Draftz, no rationale trier of fact could have found the essential elements of the crime of cannabis trafficking beyond a reasonable doubt.

## **CONCLUSION**

Based upon the facts, authority and argument set forth above, this Court should find that Michael Karastev was denied his constitutional right to effective assistance of counsel, as contemplated under *Strickland*. Accordingly, this Court should grant habeas relief by vacating Mr. Karastev's conviction and sentence and directing the State of Illinois to retry Michael Karastev within 120 days of this order

Respectfully submitted,

/s/ Marc M. Barnett
Marc M. Barnett
Attorney for Michael Karastev

Marc M. Barnett

11

Law Office of Marc M. Barnett
53 W. Jackson Boulevard
Suite 1442
Chicago, Illinois 60604
(312) 217-5019